# EXHIBIT

# A

Alamo City Engineering Services Inc. (ACES) 3463
Magic Drive, STE 137, San Antonio TX 78229
210-386-7340 | craig.stephens@aces.biz
A Service-Disabled Veteran Owned, HUB Zone
Certified Small Business
**Date: August 1, 2022**
**Subject: Letter of Commitment**



Ms. Katalina Groh,

Alamo City Engineering Services, Inc. is pleased to make this offer of a loan (the "Loan") related to
your refinancing and other financial obligations related to the four condominium units you own
(individually or through limited liability companies) in a five unit condominium building located at
132 N. Astor Street, Chicago Illinois 60610, subject to certain conditions being met as hereinafter
provided.

| | |
|---|---|
| DATE | 08/1/22 |
| LENDER | Alamo City Engineering Services Inc. |
| BORROWER | Katalina Groh (or her LLC's use same language) |
| PROPERTY | 1320 N Astor St., Chicago, IL 60610 Units G, 1, 3, 4 |
| PURPOSE | Refinancing |
| LOAN AMOUNT | $1,400,000 |
| INTEREST RATE: | Interest free first 60 days; 10 per cent annual thereafter |
| AMORTIZATION | Interest Only |
| COMMITMENT FEE | 0 |
| ORIGINATION FEE | 0 |
| EXTENSION FEE | 0 |
| TERM | Twelve months |
| INSURANCE | Borrower will present to the Lender prior to closing evidence of insurance on the Property for an amount not less than 100% of the replacement value of Groh's condominium units (owned individually and through LLC's) at the Property, liability insurance and such other insurance as Lender may require. Such coverage shall be in form and amounts, and issued by companies approved by Lender to cover such casualties, risks, perils, liabilities and other hazards as Lender may require. The |

Lender and/or its assignees shall be named as "Lender's Loss Payee" on the appropriate insurance certificate. The insurance shall provide that Lender shall receive at least thirty (30) days prior written notice of any cancellation of said insurance.

**TITLE INSURANCE**
**DOCUMENT EXECUTION**

Borrower shall provide no title insurance for this Loan. Borrower shall execute any and all documents reasonably requested by the Lender for transactions of this type and amount to carry out the terms of this Loan (the "Loan Documents"). The Loan Documents shall contain such terms and conditions, events of defaults, etc. that are customarily included but shall not require any terms that require any lien on the condominium units.

**CLOSING DATES**

The loan can/shall close by August 4, 2022. The Loan shall close by August 4, 2022 (the "Commitment Termination Date"). This commitment and all obligations of the Lender hereunder will terminate if the loan is not closed by the above captioned date. The lender can produce funds to close immediately

**PREPAYMENT PENALTY**

None

**CONFIDENTIALITY**

This commitment is for your personal use only and may not be disclosed by you to any person other than your employees, attorneys, and financial advisors (but not any commercial Lender or finance company), and then only in connection with the proposed credit facilities and on a confidential basis, except where disclosure is required by law or where the Lender consents to the proposed disclosure in writing. With written permission by both parties the borrower's attorney may disclose this document only to the current bank and the actual settlement parties only in the settlement; of which there are three. All parties must agree to not disclose this to other parties.

**OTHER PROVISIONS**

This commitment is subject to the following, acceptable at the sole discretion of the Lender, in form and content. This offer is not subject to any other provisions.

Please indicate your acceptance of this letter and return to my attention not later than five (5) business days from the date hereof, at which time this commitment will otherwise expire.

Sincerely,
Alamo City Engineering Services
Sincerely,

Craig T. Stephens, President/CEO

By: *Craig T. Stephens*

ACCEPTED AND AGREED

BORROWER:

By: _____

Name: Katalina Groh

Title: *Borrower*

Date: *August 2 2022*

# EXHIBIT

# B



# ALTA COMMITMENT FOR TITLE INSURANCE

**ISSUED BY**

**STEWART TITLE GUARANTY COMPANY**

## NOTICE

**IMPORTANT - READ CAREFULLY:** THIS COMMITMENT IS AN OFFER TO ISSUE ONE OR MORE TITLE INSURANCE POLICIES. ALL CLAIMS OR REMEDIES SOUGHT AGAINST THE COMPANY INVOLVING THE CONTENT OF THIS COMMITMENT OR THE POLICY MUST BE BASED SOLELY IN CONTRACT.

THIS COMMITMENT IS NOT AN ABSTRACT OF TITLE, REPORT OF THE CONDITION OF TITLE, LEGAL OPINION, OPINION OF TITLE, OR OTHER REPRESENTATION OF THE STATUS OF TITLE. THE PROCEDURES USED BY THE COMPANY TO DETERMINE INSURABILTY OF THE TITLE, INCLUDING ANY SEARCH AND EXAMINATION, ARE PROPRIETARY TO THE COMPANY, WERE PERFORMED SOLELY FOR THE BENEFIT OF THE COMPANY, AND CREATE NO EXTRACONTRACTUAL LIABILTY TO ANY PERSON, INCLUDING A PROPOSED INSURED.

THE COMPANY'S OBLIGATION UNDER THIS COMMITMENT IS TO ISSUE A POLICY TO A PROPOSED INSURED IDENTIFIED IN SCHEDULE A IN ACCORDANCE WITH THE TERMS AND PROVISIONS OF THIS COMMITMENT. THE COMPANY HAS NO LIABILITY OR OBLIGATION INVOLVING THE CONTENT OF THIS COMMITMENT TO ANY OTHER PERSON.

## COMMITMENT TO ISSUE POLICY

Subject to the Notice; Schedule B, Part I - Requirements; Schedule B, Part II - Exceptions; and the Commitment Conditions, STEWART TITLE GUARANTY COMPANY, a Texas corporation (the "Company"), commits to issue the Policy according to the terms and provisions of this Commitment. This Commitment is effective as of the Commitment Date shown in Schedule A for each Policy described in Schedule A, only when the Company has entered in Schedule A both the specified dollar amount as the Proposed Policy Amount and the name of the Proposed Insured.

If all of the Schedule B, Part I - Requirements have not been met within six months after the Commitment Date, this Commitment terminates and the Company's liability and obligation end.

Countersigned by:

_____

Authorized Countersigned:

Gomberg, Sharfman, P. C.
Company Name

Chicago, IL
City, State

_____
Frederick H. Eppinger
President and CEO

_____
David Hisey
Secretary

For purposes of this form the "Stewart Title" logo featured above is the represented logo for the underwriter, Stewart Title Guaranty Company.

## COMMITMENT CONDITIONS

1. **DEFINITIONS**

    (a) "Knowledge" or "Known": Actual or imputed knowledge, but not constructive notice imparted by the Public Records.

    (b) "Land": The land described in Schedule A and affixed improvements that by law constitute real property. The term "Land" does not include any property beyond the lines of the area described in Schedule A, nor any right, title, interest, estate, or easement in abutting streets, roads, avenues, alleys, lanes, ways, or waterways, but this does not modify or limit the extent that a right of access to and from the Land is to be insured by the Policy.

    (c) "Mortgage": A mortgage, deed of trust, or other security instrument, including one evidenced by electronic means authorized by law.

    (d) "Policy": Each contract of title insurance, in a form adopted by the American Land Title Association, issued or to be issued by the Company pursuant to this Commitment.

    (e) "Proposed Insured": Each person identified in Schedule A as the Proposed Insured of each Policy to be issued pursuant to this Commitment.

    (f) "Proposed Policy Amount": Each dollar amount specified in Schedule A as the Proposed Policy Amount of each Policy to be issued pursuant to this Commitment.

    (g) "Public Records": Records established under state statutes at the Commitment Date for purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge.

    (h) "Title": The estate or interest described in Schedule A.

2. If all of the Schedule B, Part I - Requirements have not been met within the time period specified in the Commitment to Issue Policy, this Commitment terminates and the Company's liability and obligation end.

3. The Company's liability and obligation is limited by and this Commitment is not valid without:

    (a) the Notice;

    (b) the Commitment to Issue Policy;

    (c) the Commitment Conditions;

    (d) Schedule A;

    (e) Schedule B, Part I - Requirements;

    (f) Schedule B, Part II - Exceptions; and

    (g) a countersignature by the Company or its issuing agent that may be in electronic form.

4. **COMPANY'S RIGHT TO AMEND**

    The Company may amend this Commitment at any time. If the Company amends this Commitment to add a defect, lien, encumbrance, adverse claim, or other matter recorded in the Public Records prior to the Commitment Date, any liability of the Company is limited by Commitment Condition 5. The Company shall not be liable for any other amendment to this Commitment.

5. **LIMITATIONS OF LIABILITY**

    (a) The Company's liability under Commitment Condition 4 is limited to the Proposed Insured's actual expense incurred in the interval between the Company's delivery to the Proposed Insured of the Commitment and the delivery of the amended Commitment, resulting from the Proposed Insured's good faith reliance to:

    (i) comply with Schedule B, Part I - Requirements;

    (ii) eliminate, with the Company's written consent, any Schedule B, Part II - Exceptions; or

    (iii) acquire the Title or create the Mortgage covered by this Commitment.

(b)  The Company shall not be liable under Commitment Condition 5(a) if the Proposed Insured requested the amendment or had Knowledge of the matter and did not notify the Company about it writing.

(c)  The Company will only have liability under Commitment Condition 4 if the Proposed Insured would not have incurred the expense had the Commitment included the added matter when the Commitment was first delivered to the Proposed Insured.

(d)  The Company's liability shall not exceed the lesser of the Proposed Insured's actual expense incurred in good faith and described in Commitments Condition 5(a)(i) through 5(a)(iii) or the Proposed Policy Amount.

(e)  The Company shall not be liable for the content of the Transaction Identification Data, if any.

(f)  In no event shall the Company be obligated to issue the Policy referred to in this Commitment unless all of the Schedule B, Part I - Requirements have been met to the satisfaction of the Company.

(g)  In any event, the Company's liability is limited by the terms and provisions of the Policy.

6.  **LIABILITY OF THE COMPANY MUST BE BASED ON THIS COMMITMENT**

    (a)  Only a Proposed Insured identified in Schedule A, and no other person, may make a claim under this Commitment.

    (b)  Any claim must be based in contract and must be restricted solely to the terms and provisions of this Commitment.

    (c)  Until the Policy is issued, this Commitment, as last revised, is the exclusive and entire agreement between the parties with respect to the subject matter of this Commitment and supersedes all prior commitment negotiations, representations, and proposals of any kind, whether written or oral, express or implied, relating to the subject matter of this Commitment.

    (d)  The deletion or modification of any Schedule B, Part II - Exception does not constitute an agreement or obligation to provide coverage beyond the terms and provisions of this Commitment or the Policy.

    (e)  Any amendment or endorsement to this Commitment must be in writing and authenticated by a person authorized by the Company.

    (f)  When the Policy is issued, all liability and obligation under this Commitment will end and the Company's only liability will be under the Policy.

7.  **IF THIS COMMITMENT HAS BEEN ISSUED BY AN ISSUING AGENT**

    The issuing agent is the Company's agent only for the limited purpose of issuing title insurance commitments and policies. The issuing agent is not the Company's agent for the purpose of providing closing or settlement services.

8.  **PRO-FORMA POLICY**

    The Company may provide, at the request of a Proposed Insured, a pro-forma policy illustrating the coverage that the Company may provide. A pro-forma policy neither reflects the status of Title at the time that the pro-forma policy is delivered to a Proposed Insured, nor is it a commitment to insure.

9.  **ARBITRATION**

    The Policy contains an arbitration clause. All arbitrable matters when the Proposed Policy Amount is $2,000,000 or less shall be arbitrated at the option of either the Company or the Proposed Insured as the exclusive remedy of the parties. A Proposed Insured may review a copy of the arbitration rules at: http://www.alta.org/arbitration.

**STEWART TITLE GUARANTY COMPANY**

All notices required to be given the Company and any statement in writing required to be furnished the Company shall be addressed to it at P.O. Box 2029, Houston, Texas 77252-2029.

# ALTA COMMITMENT FOR TITLE INSURANCE
# SCHEDULE A

ISSUED BY
STEWART TITLE GUARANTY COMPANY

*Transaction Identification Data for reference only:*

| | |
|---|---|
| Issuing Agent: | Gomberg, Sharfman, P. C. - TitleMax |
| Issuing Office: | 208 S. LaSalle Street, Suite 1410 |
| Issuing Office's ALTA® Registry ID: | |
| Loan ID Number: | |
| Commitment Number: | 51181TR |
| Issuing Office File Number: | 51181TR |
| Property Address: | 1320 N Astor Street, CondoUnit G, Chicago IL 60610 |
| Revision Number: | |

1. Commitment Date: 06/16/2022          Proposed Policy Amount:

2. Policy to be issued:

   (a) 2006 ALTA Owner's Policy      $0.00

   Proposed Insured: To Come

   (b) 2006 ALTA Loan Policy:      $0.00

   Proposed Insured: TO COME

   (c) (Additional Policy Option)

   Proposed Insured:

3. The estate or interest in the Land described or referred to in this Commitment is:

   Fee Simple

4. The Title is, at the Commitment Date, vested in:

   Katalina Groh as to Unit G and Unit 4
   1320 N. Astor Street LLC, an Illinois limited liability company as to Unit 1
   Allan J. Shoelson as to Unit 2
   1320 North Astor Unit 3 LLC as to Unit 3

5. The Land is described as follows:

   **See attached Legal Description**

# ALTA COMMITMENT FOR TITLE INSURANCE
# SCHEDULE A

ISSUED BY
STEWART TITLE GUARANTY COMPANY

## Exhibit A - Legal Description

Parcel 1: Unit 1, 2, 3, 4 and G in the 1320 North Astor E. R. T. A. Condominium as delineated on a survey of the following described real estate:

Part of Lots 1, 2 and 3 in Block 4 in H.O. Stone's Subdivision of Astor's Addition to Chicago in Section 3, Township 39 North, Range 14, East of the Third Principal Meridian, in Cook County, Illinois.

Which survey is attached as Exhibit "A" to the Declaration of Condominium recorded as Document 27353176 together with their undivided percentage in the common elements.

Parcel 2: An Exclusive right to use P-1 (for Unit G), P-2 (for Unit 1) as a limited common element as shown on Exhibit "A" and contained in the Declaration of Condominium recorded as Document 27353176 together with their undivided percentage interest in the common elements.

# ALTA COMMITMENT FOR TITLE INSURANCE
## SCHEDULE B PART I

ISSUED BY
STEWART TITLE GUARANTY COMPANY

**Requirements**

File Number: 51181TR

All of the following Requirements must be met:

1. The Proposed Insured must notify the Company in writing of the name of any party not referred to in this Commitment who will obtain an interest in the Land or who will make a loan on the Land. The Company may then make additional Requirements or Exceptions.

2. Pay the agreed amount for the estate or interest to be insured.

3. Pay the premiums, fees, and charges for the Policy to the Company.

4. Documents satisfactory to the Company that convey the Title or create the Mortgage to be insured, or both, must be properly authorized, executed, delivered, and recorded in the Public Records.

# ALTA COMMITMENT FOR TITLE INSURANCE
# SCHEDULE B PART II

ISSUED BY
STEWART TITLE GUARANTY COMPANY

**Exceptions**

File Number: 51181TR

THIS COMMITMENT DOES NOT REPUBLISH ANY COVENANT, CONDITION, RESTRICTION, OR LIMITATION CONTAINED IN ANY DOCUMENT REFERRED TO IN THIS COMMITMENT TO THE EXTENT THAT THE SPECIFIC COVENANT, CONDITION, RESTRICTION, OR LIMITATION VIOLATES STATE OR FEDERAL LAW BASED ON RACE, COLOR, RELIGION, SEX, SEXUAL ORIENTATION, GENDER IDENTITY, HANDICAP, FAMILIAL STATUS, OR NATIONAL ORIGIN.

The Policy will not insure against loss or damage resulting from the terms and provisions of any lease or easement identified in Schedule A, and will include the following Exceptions unless cleared to the satisfaction of the Company:

A. Any defect, lien, encumbrance, adverse claim, or other matter that appears for the first time in the Public Records or is created, attaches, or is disclosed between the Commitment Date and the date on which all of the Schedule B, Part I - Requirements are met.

B. **STANDARD EXCEPTIONS**

1. Rights or claims of parties in possession not shown by the public records.

2. Easements, or claims of easements, not shown by the public records.

3. Encroachments, overlaps, boundary line disputes, or other matters which would be disclosed by an accurate survey and inspection of the premises.

4. Any lien, or right to a lien, for services, labor, or material heretofore or hereafter furnished, imposed by law and not shown by the public records.

5. Taxes or special assessments which are not shown as existing liens by the public records.

C. **SPECIAL EXCEPTIONS**

1. A) General real estate taxes for the year(s) 2021, 2022 and subsequent years.

Permanent Index Number: 17-03-106-030-1001 (Volume number:496)(Affects Unit G)

Note: The first estimated installment of the 2021 taxes in the amount of $3,393.77 is posted not paid and now delinquent plus penalties.

Note: The final installment of the 2021 taxes has not yet been determined.

Note: The taxes for the year(s) 2022 are not yet due and payable.

B) General real estate taxes for the year(s) 2021, 2022 and subsequent years.

Permanent Index Number: 17-03-106-030-1002 (Volume number 496)(Affects Unit 1)

Note: The first estimated installment of the 2021 taxes in the amount of $4,482.62 is posted not paid and now delinquent plus penalties.

Note: The final installment of the 2021 taxes has not yet been determined.

Note: The taxes for the year(s) 2022 are not yet due and payable.

C) General real estate taxes for the year(s) 2021, 2022 and subsequent years.

Permanent Index Number: 17-03-106-030-1003 (Volume number 496)(Affects Unit 2)

Note: The first estimated installment of the 2021 taxes in the amount of $4,039.79 is posted not paid and now delinquent plus penalties.

Note: The final installment of the 2021 taxes has not yet been determined.

Note: The taxes for the year(s) 2022 are not yet due and payable.

D) General real estate taxes for the year(s) 2021, 2022 and subsequent years.

Permanent Index Number: 17-03-106-030-1004 (Volume number 496)(Affects Unit 3)

Note: The first estimated installment of the 2021 taxes in the amount of $4,723.98 is posted not paid and now delinquent plus penalties.

Note: The final installment of the 2021 taxes has not yet been determined.

Note: The taxes for the year(s) 2022 are not yet due and payable.

E) General real estate taxes for the year(s) 2021, 2022 and subsequent years.

Permanent Index Number: 17-03-106-030-1005 (Volume number 496)(Affects Unit 4)

Note: The first estimated installment of the 2021 taxes in the amount of $5,452.87 is posted not paid and now delinquent plus penalties.

Note: The final installment of the 2021 taxes has not yet been determined.

Note: The taxes for the year(s) 2022 are not yet due and payable.

2. Mortgage dated 07/02/2004 and recorded 07/19/2004 as document number 0420142163, made by Katalina Groh, an unmarried woman, to Lincoln Park Savings Bank, to secure an indebtedness of $178,100.00 and such other sums as provided therein.

Assignment of aforesaid mortgage to Northbrook Bank and Trust Company, recorded as document number 1915617104 .

Assignment of aforesaid mortgage to OIC Astor LLC, recorded as document number 2207008026 .

Affects Unit G

3. Mortgage dated 07/02/2004 and recorded 07/19/2004 as document number 0420142165 , made by Katalina Groh, to Lincoln Park Savings Bank, to secure an indebtedness of $159,300.00 and such other sums as provided therein.

Assignment of aforesaid mortgage to Northbrook Bank and Trust Company, recorded as document number 1915606168

Assignment of aforesaid mortgage to OIC Astor LLC, recorded as document number 2207008024 .

Affects Unit 1

4. Mortgage dated 03/18/1991 and recorded 03/21/1991 as document number 91128237 , made by Allan J. Shoelson, to One Illinois Bank Evanston, to secure an indebtedness of $127,500.00 and such other sums as provided therein.

Assignment of aforesaid mortgage to Homeside Lending, recorded as document number 98705601 .

Affects Unit 2

5. Mortgage dated 03/30/2005 and recorded 04/06/2005 as document number 0509602244 , made by Katalina Groh, to Lincoln Park Savings Bank, to secure an indebtedness of $196,000.00 and such other sums as provided therein.

Assignment of aforesaid mortgage to Northbrook Bank and Trust Company, recorded as document number 1915606175

Affects Unit 3

6. Mortgage dated 07/02/2004 and recorded 08/03/2004 as document number 0421642029 , made by Katalina Groh, to Lincoln Park Savings Bank, to secure an indebtedness of $272,000.00 and such other sums as provided therein.

Assignment of aforesaid mortgage to Northbrook Bank and Trust Company, recorded as document number 1915617108 .

Assignment of aforesaid mortgage to OIC Astor LLC, recorded as document number 2207008023 .

Affects Unit 4

7. (a) Terms, provisions, covenants, conditions, restrictions and options in rights and easements established by the Declaration of

Condominium Ownership recorded 12/31/1985 as Document Number 27353176, as amended from time to time.

(b) Provisions, limitations and conditions as imposed by the "Condominium Property Act".

8. We must be furnished a letter from the Condominium Association reciting that there are no liens by reason of the non-payment of special, monthly or annual assessments. Said letter must cover the month of closing.

9.Covenants, conditions and restrictions contained in instrument recorded as document number 85343983 .

(For further particulars see record)

NOTE: A breach or violation of the above noted restrictions will not cause a forfeiture or reversion of title.

10. Proceedings pending in the Circuit Court of Cook County, Case No. 2018CH01717, on a complaint filed to foreclose 0420142163.
Lis Pendens Notice recorded as Instrument No. 1804413077 and Amended Notice of Foreclosure recorded 03/02/2018 as Document Number 1806129091.
NOTE: The Attorney for the Plaintiff is: Chuhak & Tecson, P.C.
NOTE: We have not made an examination of the above noted proceedings.

Affects Unit G

11. Proceedings pending in the Circuit Court of Cook County, Case No. 2018 CH 02041, on a complaint filed to foreclose mortgage document number 0420142165.
Lis Pendens Notice recorded as document number 1805822053.
NOTE: The Attorney for the Plaintiff is: Chuhak & Tecson, P.C.
NOTE: We have not made an examination of the above noted proceedings.

Affects Unit 1

12. Proceedings pending in the Circuit Court of Cook County, Case No. 2018CH01984, on a complaint filed to foreclose mortgage document number 0509602244 .
Lis Pendens Notice recorded as document number 1805822055.
NOTE: The Attorney for the Plaintiff is: Chuhak & Tecson, P.C.
NOTE: We have not made an examination of the above noted proceedings.

Affects Unit 3

13. Proceedings pending in the Circuit Court of Cook County, Case No. 2018CH02069, on a complaint filed to foreclose mortgage document number 0421642029 .
Lis Pendens Notice recorded as document number 1805822054 .
NOTE: The Attorney for the Plaintiff is: Chuhak & Tecson, P.C.
NOTE: We have not made an examination of the above noted proceedings.

Affects Unit 4

14. Recording of Findings, Decision and Order recorded 09/15/2015 as document number 1029812129 , Case No. 010BS03569A, Circuit Court of Cook County, by the City of Chicago and against Katalina Groh, for building code violations, demolition and lien.

Affects Unit 3

15. Claim for Lien executed by Phoenix Rising Management, LLC against Allan Shoelson, individually and d/b/a 1320 N. Astor Street LLC in the original amount of $38,637.22 recorded as Instrument No.1306522115 .

Affects Unit 2

16. Recording of Findings, Decision and Order recorded 09/15/2015 as document number 1525839191 , Case No. 07BS12553A, Circuit Court of Cook County, by the City of Chicago and against Katalina Groh, for building code violations, demolition and lien.

Note: Judgment total: $1,540.00

17. Claim for Lien executed by Phoenix Rising Management, LLC against Katalina Groh, individually and d/b/a 1320 N. Astor Street LLC in the original amount of $23,443.10, recorded as Instrument No.1731834086.

Affects Unit G, 1, 3 and 4

18. Claim for Lien executed by Phoenix Rising Management, LLC against Katalina Groh, individually and d/b/a 1320 N. Astor Street LLC in the original amount of $34,334.65, recorded as Instrument No.1736144051.

Affects Unit G, 1, 3 and 4

19. Claim for Lien executed by Phoenix Rising Management, LLC against Katalina Groh, individually and d/b/a 1320 N. Astor Street LLC in the original amount of $13,458.14 recorded as Instrument No.1808822051 .

Affects Unit 1

20. Claim for Lien executed by the Board of Managers of the 1320 North Astor Condominium Association, LLC against Katalina Groh, individually and d/b/a 1320 N. Astor Street LLC in the original amount of $14,170.28 recorded as Instrument No.1808822052 .

21. Claim for Lien executed by Phoenix Rising Management, LLC against Katalina Groh, individually and d/b/a 1320 N. Astor Street LLC in the original amount of $16,320.44 recorded as Instrument No.1808822053 .

Affects Unit 4

22. Claim for Lien executed by Phoenix Rising Management, LLC against Katalina Groh, individually and d/b/a 1320 N. Astor Street LLC in the original amount of $10,246.36, recorded as Instrument No.1808822054.

Affects Unit G

23. Claim for Lien executed by Phoenix Rising Management, LLC against Katalina Groh, individually and d/b/a 1320 N. Astor Street LLC in the original amount of $20,828.12, recorded as Instrument No.1826145040.

Affects Unit G

24. Claim for Lien executed by Phoenix Rising Management, LLC against Katalina Groh, individually and d/b/a 1320 N. Astor Street LLC in the original amount of $33,216.13 recorded as Instrument No.1826145041 .

Affects Unit 4

25. Claim for Lien executed by Phoenix Rising Management, LLC against Katalina Groh, individually and d/b/a 1320 N. Astor Street LLC in the original amount of $28,831.01 recorded as Instrument No.1826145042 .

Affects Unit 3

26. Claim for Lien executed by Phoenix Rising Management, LLC against Katalina Groh, individually and d/b/a 1320 N. Astor Street LLC in the original amount of $27,378.48 recorded as Instrument No.1826145043 .

Affects Unit 1

27. Claim for Lien executed by Phoenix Rising Management, LLC against Katalina Groh, individually and d/b/a 1320 N. Astor Street LLC in the original amount of $33,319.34 recorded as Instrument No.1902506022 .

Affects Unit 1

28. Claim for Lien executed by Phoenix Rising Management, LLC against Katalina Groh, individually and d/b/a 1320 N. Astor Street LLC in the original amount of $42,820.81 recorded as Instrument No.1902506023 .

Affects Unit 4

29. Claim for Lien executed by Phoenix Rising Management, LLC against Katalina Groh, individually and d/b/a 1320 N. Astor Street LLC in the original amount of $37,158.57 recorded as Instrument No.1902506024 .

Affects Unit 3

30. Claim for Lien executed by Phoenix Rising Management, LLC against Katalina Groh, individually and d/b/a 1320 N. Astor Street LLC in the original amount of $25,338.16 recorded as Instrument No.1902506025 .

Affects Unit G

31. Claim for Lien executed by Phoenix Rising Management, LLC against Katalina Groh, individually and d/b/a 1320 N. Astor Street LLC in the original amount of $122,665.59 recorded as Instrument No.1907044020 .

Affects Unit 4

32. Claim for Lien executed by Phoenix Rising Management, LLC against Katalina Groh, individually and d/b/a 1320 N. Astor Street LLC in the original amount of $122,665.59 recorded as Instrument No.1907044021 .

Affects Unit 3

33. Claim for Lien executed by Phoenix Rising Management, LLC against Katalina Groh, individually and d/b/a 1320 N. Astor

Street LLC in the original amount of $122,665.59 recorded as Instrument No. 1907044022 .

Affects Unit G

34. Claim for Lien executed by Phoenix Rising Management, LLC against Katalina Groh, individually and d/b/a 1320 N. Astor Street LLC in the original amount of $122,665.59 recorded as Instrument No. 1907044023 .

Affects Unit 1

35. Claim for Lien executed by Phoenix Rising Management, LLC against Katalina Groh, individually and d/b/a 1320 N. Astor Street LLC in the original amount of $50,992.30 recorded as Instrument No. 1907044024 .

Affects Unit 4

36. Claim for Lien executed by Phoenix Rising Management, LLC against Katalina Groh, individually and d/b/a 1320 N. Astor Street LLC in the original amount of $37,675.10 recorded as Instrument No. 1910016099 .

Affects Unit G

37. Claim for Lien executed by Phoenix Rising Management, LLC against Katalina Groh, individually and d/b/a 1320 N. Astor Street LLC in the original amount of $130,121.79 recorded as Instrument No. 1910016100 .

Affects Unit 1

38. Claim for Lien executed by Phoenix Rising Management, LLC against Katalina Groh, individually and d/b/a 1320 N. Astor Street LLC in the original amount of $130,121.79 recorded as Instrument No. 1910016101 .

Affects Unit 4

39. Claim for Lien executed by Phoenix Rising Management, LLC against Katalina Groh, individually and d/b/a 1320 N. Astor Street LLC in the original amount of $130,121.79 recorded as Instrument No. 1910016102 .

Affects Unit 3

40. Claim for Lien executed by Phoenix Rising Management, LLC against Katalina Groh, individually and d/b/a 1320 N. Astor Street LLC in the original amount of $130,121.79 recorded as Instrument No. 1910016103 .

Affects Unit G

41. Order entered in Case Number 17L1531 recorded as document number 1910513184

42. The deed recorded 05/13/2011 as document number 1113318045 is defective for the reasons stated herein: not legal description attached

The Company requires:
(a) That the deed or a certified copy thereof be corrected and re-recorded, or

(b) That a new satisfactory deed be executed, properly acknowledged and recorded. The Company may then make additional requirements or exceptions.

43. With respect to the Limited Liability Company shown in Schedule A in title to the land, the Company must be provided with the following:
a) A certification from the Illinois Secretary of State that the L.L.C. has properly filed its articles of organization;
b) A copy of the Articles of Organization, together with any amendments thereto;
c) A Certificate of Good Standing from the Illinois Secretary of State;
d) A copy of the Operating agreement and all amendments thereto; and,
e) A Roster of members or incumbent managers.
f) A certification that no event of dissolution has occurred.

NOTE: Unless the deed is executed by all members, we must also be furnished evidence satisfactory to the Company that all necessary consents, authorizations, resolutions, notices and actions relating to the sale and the execution and delivery of the deed as required under applicable law and the governing documents have been conducted, given or properly waived.

Affects Unit 1, 3

44. This Company requires that the spouse or domestic partner (if any) also sign in any conveyance or encumbrance before such transaction can be insured.

FOR INFORMATIONAL PURPOSES: The loan policy, when issued, will contain the following:

Comprehensive Endorsement

EPA Endorsement

Condominium Endorsement

NOTE: The following 24 month chain of title is shown for informational purposes only and not the purpose of insuring: Title to the estate or interest shown in Schedule A was acquired by Warranty Deed dated 08/28/2002 and recorded 12/03/2002, as document number 0021330494, from James E. Kuhlman, an unmarried man to Katalina A. Groh and rerecorded 08/16/2004 as document number as 0422935098 and rerecorded 03/30/2007 as document number 0708956045.

Affects Unit G

NOTE: The following 24 month chain of title is shown for informational purposes only and not the purpose of insuring: Title to the estate or interest shown in Schedule A was acquired by Deed dated 02/19/2008 and recorded 03/27/2008 as Instrument No. 0808755040 from Katalina Groh, to 1320 N. Astor Street LLC, an Illinois limited liability company.

Affects Unit 1

NOTE: The following 24 month chain of title is shown for informational purposes only and not the purpose of insuring: Title to the estate or interest shown in Schedule A was acquired by Deed dated 03/18/1991 and recorded 03/21/1991 as Instrument No. 91128236 from Commercial National Bank Chicago as trustee of the Trust #782, to Allan J. Shoelson.

Affects Unit 2

NOTE: The following 24 month chain of title is shown for informational purposes only and not the purpose of insuring: Title to the estate or interest shown in Schedule A was acquired by Deed dated 05/11/2011 and recorded 05/13/2011 as Instrument No. 1113318045 from 1320 N. Astor Street LLC, to 1320 North Astor Unit 3 LLC.

Affects Unit 3

NOTE: The following 24 month chain of title is shown for informational purposes only and not the purpose of insuring: Title to the estate or interest shown in Schedule A was acquired by Deed dated 08/28/2002 and recorded 12/03/2002 as Instrument No. 0021330494 and re recorded 08/16/2004 as document number 0422935098 from James E. Kuhlman, to Katalina Groh.

Affects Unit 4

Note: Your attention is directed to Illinois Statute 765 ILCS 77/70 (SB1167), which requires either a Certificate of Exemption or a Certificate of Compliance in order for mortgages to be recorded in Cook, Will, Kane & Peoria Counties. The County Recorder will not record any mortgage unless the same has a Certificate of Compliance or Exemption attached thereto.
Will, Kane & Peoria Counties will be effected for any settlement services on and after July 1st of 2010.

-- Stewart Title will charge a $75.00 SB1167 certificate Processing Fee.

This Company is required by Federal Law to collect certain additional information from you and the parties representing you regarding the purchase of real property. US Code Title 31-Sec 5326 authorizes the U.S Department of Treasury to collect information about certain transaction as specified in various geographic targeting orders for the purpose of preventing evasion of the Bank Secrecy Act. As a result of a Geographic Targeting Order ("GTO") issued by the United States Department of Treasury, Financial Crimes Enforcement Network ("FinCEN"), on May 21, 2018, this transaction may be responsive to the requirements of the GTO. You may be required, as a condition of the issuance of the policy to provide additional information that will be reported to FinCEN. Please contact this company and provide the details of this transaction in order to comply with the GTO.

If the transaction meets the reporting requirement, you will be asked to provide information on the identity of the parties to the transaction, which will be reported to FinCEN. This company is prohibited from issuing its policy if the transaction is reportable and the information is not provided for reporting. Additional exceptions and or requirements may be raised.

Title 31-Section 5326, as implemented by Treasury orders, prohibits the Company from disclosing the specific terms of the GTO.

***************************Customer Information***************************

As of July 19, 1995, pursuant to Bill, Public Act 87-1197, all documents recorded within the State of Illinois must meet the following requirements:

**The document shall consist of one or more individual sheets measuring 8.5 inches by 11 inches, not permanently bound and not a continuous form. Graphic displays accompanying a document to be recorded that measures up to 11 inches by 17 inches shall be recorded without charging an additional fee;

**The document shall be legibly printed in black ink, by hand, typewritten or computer generated, in at least 10 point type. Signatures and dates may be in contrasting colors as long as they will reproduce clearly;

**The document shall be on white paper of not less than 20 pound weight and have a clean margin of at least 1/2 inch on the top,

bottom and each side. Margins may be used only for non-essential notations which will not affect the validity of the document, including but not limited to form numbers, page numbers, and customer notations;

**The first page shall contain a blank space in the upper right hand corner measuring at least 3 inches by 5 inches;

**The document shall not have any attachment stapled, taped or otherwise affixed to any page.

Note: The recorders offices throughout the State of Illinois will accept all documents for recordation. Those that do not meet the requirements of the Bill will cost double the recording fee to record.

**Please note that as of March 1, 2017, Stewart Title of Illinois will no longer accept wire instructions via email to disburse closing proceeds. Please utilize our Proceeds/Funds Disbursement Instructions to obtain original signatures from all of the title holders. This form must be submitted at closing in order for funds to be wired. Proceeds - Funds Disbursement Instructions Form**

**NOTE: The Good Funds provision of the Illinois Title Insurance Act (215 ILCS 155/26) became effective January 1, 2010. This law imposes stricter rules on the type of funds that can be accepted for real estate closings and requires wired funds over $50,000.00. Any funds less than $50,000 must be good funds in the form of a cashiers check, certified checks, money orders or official bank checks. Contact your settlement agent to confirm the type of funds that are required for your transaction.**

# Stewart Title Guaranty Company Privacy Notice
## Stewart Title Companies

**WHAT DO THE STEWART TITLE COMPANIES DO WITH YOUR PERSONAL INFORMATION?**

Federal and applicable state law and regulations give consumers the right to limit some but not all sharing. Federal and applicable state law regulations also require us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand how we use your personal information. This privacy notice is distributed on behalf of the Stewart Title Guaranty Company and its title affiliates (the Stewart Title Companies), pursuant to Title V of the Gramm-Leach-Bliley Act (GLBA).

The types of personal information we collect and share depend on the product or service that you have sought through us. This information can include social security numbers and driver's license number.

All financial companies, such as the Stewart Title Companies, need to share customers' personal information to run their everyday business—to process transactions and maintain customer accounts. In the section below, we list the reasons that we can share customers' personal information; the reasons that we choose to share; and whether you can limit this sharing.

| Reasons we can share your personal information | Do we share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes-** to process your transactions and maintain your account. This may include running the business and managing customer accounts, such as processing transactions, mailing, and auditing services, and responding to court orders and legal investigations. | Yes | No |
| **For our marketing purposes-** to offer our products and services to you. | Yes | No |
| **For joint marketing with other financial companies** | No | We don't share |
| **For our affiliates' everyday business purposes-** information about your transactions and experiences. Affiliates are companies related by common ownership or control. They can be financial and non-financial companies. *Our affiliates may include companies with a Stewart name; financial companies, such as Stewart Title Company.* | Yes | No |
| **For our affiliates' everyday business purposes-** information about your creditworthiness. | No | We don't share |
| **For our affiliates to market to you-**For your convenience, Stewart has developed a means for you to opt out from its affiliates marketing even though such mechanism is not legally required. | Yes | Yes, send your first and last name, the email address used in your transaction, your Stewart file number and the Stewart office location that is handling your transaction by email to optout@stewart.com or fax to 1-800-335-9591. |
| **For non-affiliates to market to you.** Non-affiliates are companies not related by common ownership or control. They can be financial and non-financial companies. | No | We don't share |

We may disclose your personal information to our affiliates or to non-affiliates as permitted by law. If you request a transaction with a non-affiliate, such as a third party insurance company, we will disclose your personal information to that non-affiliate. [We do not control their subsequent use of information, and suggest you refer to their privacy notices.]

## Sharing Practices

| | |
|---|---|
| How often do the Stewart Title Companies notify me about their practices? | We must notify you about our sharing practices when you request a transaction. |
| How do the Stewart Title Companies protect my personal information? | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. The measures include computer, file and building safeguards. |
| How do the Stewart Title Companies collect my personal information? | We collect your personal information, for example, when you<br>• request insurance-related services<br>• provide such information to us<br><br>We also collect your personal information form others, such as the real estate agent or lender involved in your transaction, credit reporting agencies, affiliates or other companies. |
| What sharing can I limit? | Although federal and state law give you the right to limit sharing (e.g., opt out) in certain instances, we do not share your personal information in those instances. |

**Contact us: If you have any questions about this privacy notice, please contact us at: Stewart Title Guaranty Company, 1360 Post Oak Blvd., Ste. 100, Privacy Officer, Houston, Texas 77056**

File No.: 51181TR

Revised 01-01-2020

## Privacy Notice for California Residents

Pursuant to the California Consumer Privacy Act of 2018 ("CCPA"), Stewart Information Services Corporation and its subsidiary companies (collectively, "Stewart") are providing this Privacy Notice for California Residents ("CCPA Notice"). This CCPA Notice supplements the information contained in Stewart's existing privacy notice and applies solely to all visitors, users and others who reside in the State of California or are considered California Residents ("consumers" or "you"). Terms used but not defined shall have the meaning ascribed to them in the CCPA.

<u>Information Stewart Collects</u>

Stewart collects information that identifies, relates to, describes, references, is capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer, household, or device. Most of the information that Stewart collects in the course of its regular business is already protected pursuant to the Gramm-Leach-Bliley Act (GLBA). Additionally, much of this information comes from government records or other information already in the public domain. Personal information under the CCPA does not include:

- Publicly available information from government records.
- Deidentified or aggregated consumer information.
- Certain personal information protected by other sector-specific federal or California laws, including but not limited to the Fair Credit Reporting Act (FCRA), GLBA and California Financial Information Privacy Act (FIPA).

Specifically, Stewart has collected the following categories of personal information from consumers within the last twelve (12) months:

| Category | Examples | Collected? |
|---|---|---|
| A. Identifiers | A real name, alias, postal address, unique personal identifier, online identifier, Internet Protocol address, email address, account name, Social Security number, driver's license number, passport number, or other similar identifiers. | YES |
| B. Personal information categories listed in the California Customer Records statute (Cal. Civ. Code § 1798.80(e)). | A name, signature, Social Security number, physical characteristics or description, address, telephone number, passport number, driver's license or state identification card number, insurance policy number, education, employment, employment history, bank account number, credit card number, debit card number, or any other financial information, medical information, or health insurance information. Some personal information included in this category may overlap with other categories. | YES |
| C. Protected classification characteristics under California or federal law. | Age (40 years or older), race, color, ancestry, national origin, citizenship, religion or creed, marital status, medical condition, physical or mental disability, sex (including gender, gender identity, gender expression, pregnancy or childbirth and related medical conditions), sexual orientation, veteran or military status, genetic information (including familial genetic information). | YES |
| D. Commercial information. | Records of personal property, products or services purchased, obtained, or considered, or other purchasing or consuming histories or tendencies. | YES |
| E. Biometric information. | Genetic, physiological, behavioral, and biological characteristics, or activity patterns used to extract a template or other identifier or identifying information, such as, fingerprints, faceprints, and voiceprints, iris or retina scans, keystroke, gait, or other physical patterns, and sleep, health, or exercise data. | YES |
| F. Internet or other similar network activity. | Browsing history, search history, information on a consumer's interaction with a website, application, or advertisement. | YES |
| G. Geolocation data. | Physical location or movements. | YES |
| H. Sensory data. | Audio, electronic, visual, thermal, olfactory, or similar information. | YES |
| I. Professional or employment-related information. | Current or past job history or performance evaluations. | YES |
| J. Non-public education information (per the Family Educational Rights and Privacy Act (20 U.S.C. Section 1232g, 34 C.F.R. Part 99)). | Education records directly related to a student maintained by an educational institution or party acting on its behalf, such as grades, transcripts, class lists, student schedules, student identification codes, student financial information, or student disciplinary records. | YES |
| K. Inferences drawn from other personal information. | Profile reflecting a person's preferences, characteristics, psychological trends, predispositions, behavior, attitudes, intelligence, abilities, and aptitudes. | YES |

File No.: 51181TR                                                        Revised 01-01-2020

Stewart obtains the categories of personal information listed above from the following categories of sources:

- Directly and indirectly from customers, their designees or their agents (For example, realtors, lenders, attorneys, etc.)
- Directly and indirectly from activity on Stewart's website or other applications.
- From third-parties that interact with Stewart in connection with the services we provide.

<u>Use of Personal Information</u>

Stewart may use or disclose the personal information we collect for one or more of the following purposes:

- To fulfill or meet the reason for which the information is provided.
- To provide, support, personalize, and develop our website, products, and services.
- To create, maintain, customize, and secure your account with Stewart.
- To process your requests, purchases, transactions, and payments and prevent transactional fraud.
- To prevent and/or process claims.
- To assist third party vendors/service providers who complete transactions or perform services on Stewart's behalf.
- As necessary or appropriate to protect the rights, property or safety of Stewart, our customers or others.
- To provide you with support and to respond to your inquiries, including to investigate and address your concerns and monitor and improve our responses.
- To personalize your website experience and to deliver content and product and service offerings relevant to your interests, including targeted offers and ads through our website, third-party sites, and via email or text message (with your consent, where required by law).
- To help maintain the safety, security, and integrity of our website, products and services, databases and other technology assets, and business.
- To respond to law enforcement or regulator requests as required by applicable law, court order, or governmental regulations.
- Auditing for compliance with federal and state laws, rules and regulations.
- Performing services including maintaining or servicing accounts, providing customer service, processing or fulfilling orders and transactions, verifying customer information, processing payments, providing advertising or marketing services or other similar services.
- To evaluate or conduct a merger, divestiture, restructuring, reorganization, dissolution, or other sale or transfer of some or all of our assets, whether as a going concern or as part of bankruptcy, liquidation, or similar proceeding, in which personal information held by us is among the assets transferred.

Stewart will not collect additional categories of personal information or use the personal information we collected for materially different, unrelated, or incompatible purposes without providing you notice.

<u>Disclosure of Personal Information to Affiliated Companies and Nonaffiliated Third Parties</u>

Stewart does not sell your personal information to nonaffiliated third parties. Stewart may share your information with those you have designated as your agent in the course of your transaction (for example, a realtor or a lender). Stewart may disclose your personal information to a third party for a business purpose. Typically, when we disclose personal information for a business purpose, we enter a contract that describes the purpose and requires the recipient to both keep that personal information confidential and not use it for any purpose except performing the contract.

We share your personal information with the following categories of third parties:

- Service providers and vendors (For example, search companies, mobile notaries, and companies providing credit/debit card processing, billing, shipping, repair, customer service, auditing, marketing, etc.)
- Affiliated Companies
- Litigation parties and attorneys, as required by law.
- Financial rating organizations, rating bureaus and trade associations.
- Federal and State Regulators, law enforcement and other government entities

In the preceding twelve (12) months, Stewart has disclosed the following categories of personal information for a business purpose:

Category A: Identifiers
Category B: California Customer Records personal information categories
Category C: Protected classification characteristics under California or federal law
Category D: Commercial Information
Category E: Biometric Information
Category F: Internet or other similar network activity
Category G: Geolocation data
Category H: Sensory data
Category I: Professional or employment-related information
Category J: Non-public education information
Category K: Inferences

<u>Consumer Rights and Choices</u>

The CCPA provides consumers (California residents) with specific rights regarding their personal information. This section describes your CCPA rights and explains how to exercise those rights.

File No.: 51181TR                                    Revised 01-01-2020

**Access to Specific Information and Data Portability Rights**

You have the right to request that Stewart disclose certain information to you about our collection and use of your personal information over the past 12 months. Once we receive and confirm your verifiable consumer request, Stewart will disclose to you:

- The categories of personal information Stewart collected about you.
- The categories of sources for the personal information Stewart collected about you.
- Stewart's business or commercial purpose for collecting that personal information.
- The categories of third parties with whom Stewart shares that personal information.
- The specific pieces of personal information Stewart collected about you (also called a data portability request).
- If Stewart disclosed your personal data for a business purpose, a listing identifying the personal information categories that each category of recipient obtained.

**Deletion Request Rights**

You have the right to request that Stewart delete any of your personal information we collected from you and retained, subject to certain exceptions. Once we receive and confirm your verifiable consumer request, Stewart will delete (and direct our service providers to delete) your personal information from our records, unless an exception applies.

Stewart may deny your deletion request if retaining the information is necessary for us or our service providers to:

1. Complete the transaction for which we collected the personal information, provide a good or service that you requested, take actions reasonably anticipated within the context of our ongoing business relationship with you, or otherwise perform our contract with you.
2. Detect security incidents, protect against malicious, deceptive, fraudulent, or illegal activity, or prosecute those responsible for such activities.
3. Debug products to identify and repair errors that impair existing intended functionality.
4. Exercise free speech, ensure the right of another consumer to exercise their free speech rights, or exercise another right provided for by law.
5. Comply with the California Electronic Communications Privacy Act (Cal. Penal Code § 1546 seq.).
6. Engage in public or peer-reviewed scientific, historical, or statistical research in the public interest that adheres to all other applicable ethics and privacy laws, when the information's deletion may likely render impossible or seriously impair the research's achievement, if you previously provided informed consent.
7. Enable solely internal uses that are reasonably aligned with consumer expectations based on your relationship with us.
8. Comply with a legal obligation.
9. Make other internal and lawful uses of that information that are compatible with the context in which you provided it.

Exercising Access, Data Portability, and Deletion Rights

To exercise the access, data portability, and deletion rights described above, please submit a verifiable consumer request to us either:

- Calling us Toll Free at 1-866-571-9270
- Emailing us at Privacyrequest@stewart.com
- Visiting http://stewart.com/ccpa

Only you, or someone legally authorized to act on your behalf, may make a verifiable consumer request related to your personal information. You may also make a verifiable consumer request on behalf of your minor child.

To designate an authorized agent, please contact Stewart through one of the methods mentioned above.

You may only make a verifiable consumer request for access or data portability twice within a 12-month period. The verifiable consumer request must:

- Provide sufficient information that allows us to reasonably verify you are the person about whom we collected personal information or an authorized representative.
- Describe your request with sufficient detail that allows us to properly understand, evaluate, and respond to it.

Stewart cannot respond to your request or provide you with personal information if we cannot verify your identity or authority to make the request and confirm the personal information relates to you.

Making a verifiable consumer request does not require you to create an account with Stewart.

Response Timing and Format

We endeavor to respond to a verifiable consumer request within forty-five (45) days of its receipt. If we require more time (up to an additional 45 days), we will inform you of the reason and extension period in writing.

File No.: 51181TR                                         Revised 01-01-2020

A written response will be delivered by mail or electronically, at your option.

Any disclosures we provide will only cover the 12-month period preceding the verifiable consumer request's receipt. The response we provide will also explain the reasons we cannot comply with a request, if applicable. For data portability requests, we will select a format to provide your personal information that is readily useable and should allow you to transmit the information from one entity to another entity without hindrance.

Stewart does not charge a fee to process or respond to your verifiable consumer request unless it is excessive, repetitive, or manifestly unfounded. If we determine that the request warrants a fee, we will tell you why we made that decision and provide you with a cost estimate before completing your request.

<u>Non-Discrimination</u>

Stewart will not discriminate against you for exercising any of your CCPA rights. Unless permitted by the CCPA, we will not:

- Deny you goods or services.
- Charge you a different prices or rates for goods or services, including through granting discounts or other benefits, or imposing penalties.
- Provide you a different level or quality of goods or services.
- Suggest that you may receive a different price or rate for goods or services or a different level or quality of goods or services.

<u>Changes to Our Privacy Notice</u>

Stewart reserves the right to amend this privacy notice at our discretion and at any time. When we make changes to this privacy notice, we will post the updated notice on Stewart's website and update the notice's effective date. **Your continued use of Stewart's website following the posting of changes constitutes your acceptance of such changes.**

<u>Contact Information</u>

If you have questions or comments about this notice, the ways in which Stewart collects and uses your information described here, your choices and rights regarding such use, or wish to exercise your rights under California law, please do not hesitate to contact us at:

| | |
|---|---|
| **Phone:** | Toll Free at 1-866-571-9270 |
| **Website:** | **http://stewart.com/ccpa** |
| **Email:** | Privacyrequest@stewart.com |
| **Postal Address:** | Stewart Information Services Corporation |
| | Attn: Mary Thomas, Deputy Chief Compliance Officer |
| | 1360 Post Oak Blvd., Ste. 100, MC #14-1 |
| | Houston, TX 77056 |

File No.: 51181TR

Revised 01-01-2020

# EXHIBIT

# C



SCHEEF & STONE
SOLID COUNSEL

April 17, 2025

***Via Electronic Mail***
*robtg@lavellelaw.com*

Robert M. Gomberg
Lavelle Law
141 West Jackson Blvd., Suite 2800
Chico, Illinois 60604

> Re:   Loan from Alamo Engineering Services, Inc. in the amount of
> $1.4 million to Katalina Groh and Groh Productions, Inc. (the
> "Loan")

Dear Mr. Gomberg:

This law firm has been retained by Alamo City Engineering Services, Inc. ("ACES") to recover monies owed to it by your clients Katalina Groh and Groh Productions, Inc. (collectively "Groh").

On August 1, 2022, Groh and ACES entered into a loan agreement whereby ACES agreed to loan to Groh $1.4 million to refinance loans, pay past due condominium assessments, liens, and other financial obligations of Groh in four condominium units Groh owned, individually or through entities she controlled, in a building located at 1320 N. Astor Street, Chicago, Illinois 60610 (the "Astor Building"). A true and correct copy of the loan agreement is attached.

As set forth in the loan agreement, the term of the Loan was for 12 months and Groh agreed to pay, in addition to the principal amount of the Loan, interest at the rate of ten percent per annum (10%) after the first 60 days of the Loan.

Pursuant to the loan agreement, and in reliance upon the representations by Groh that the $1.4 million in Loan proceeds would be used to pay assessments and liens on four condominium units that are part of the Astor Building, on August 4, 2022, ACES wired to Groh's account at Metropolitan Capital Bank & Trust the sum of $1.4 million.

The Loan matured on August 1, 2023, and to date Groh has failed to make any principal or interest payments owing under the Loan. Groh is in default under the loan agreement and owes to ACES the principal amount of the Loan in the amount of $1,400,000, plus accrued and unpaid interest from October 4, 2022 through April 15, 2025, at the rate of ten percent per annum (10%), which totals $354,219.16. Interest continues to accrue on the Loan at the rate of $383.56 per diem.

Demand is hereby made upon Groh to immediately pay to ACES the total principal and interest owing under the Loan as of April 15, 2025, in the amount of **$1,754,219.16**.

In addition, ACES recently obtained a title commitment regarding the Astor Building and discovered that contrary to Groh's representations to ACES, Groh did not use the proceeds of the Loan to pay liens and assessments on the four condominium units owned by Groh or entities she controls in the Astor Building.

Based on the foregoing, if Groh does not fully repay the amounts owing to ACES by on or before May 1, 2025, ACES will file a lawsuit against Groh for not only breach of the loan agreement, but also for fraud and misrepresentation. In such lawsuit, ACES will not only seek recovery of monies owing under the Loan, but ACES will also seek its' reasonable and necessary attorneys' fees and expenses incurred in recovering the monies owed. Moreover, with respect to its fraud claim, ACES will seek punitive damages.

Should you have any questions or wish to discuss this matter, please do not hesitate to call.

Sincerely,

Kelly M. Crawford

cc:   Craig T. Stephens
       Brad Newberry, Esq.
       Bill Stone, Esq.