**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ALAMO CITY ENGINEERING SERVICES, INC,** | § | |
| | § | |
| **Plaintiff,** | § | **CASE NO.: 1:25-cv-05744** |
| **v.** | § | |
| | § | |
| **KATALINA GROH** | § | |
| | § | |
| **Defendant.** | § | |

**<u>PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS</u>**

COMES NOW Plaintiff Alamo City Engineering Services, Inc. ("Plaintiff" or "ACES"), and files its Response to Defendant Katalina Groh's ("Groh" or "Defendant") Motion to Dismiss ("Defendant's Motion"). In support thereof, ACES respectfully shows the Court the following:

## I. SUMMARY

Accepting ACES's well-pleaded factual allegations as true and drawing all reasonable inferences in ACES's favor, the First Amended Complaint ("FAC") plausibly alleges that Defendant induced ACES to advance $1.4 million through actionable misrepresentations concerning her existing financial condition and ability to repay, misused the loan proceeds contrary to the parties' agreement, and failed to repay the Loan[1] at maturity. Defendant's motion improperly asks the Court to resolve factual disputes, weigh evidence, and draw inferences in Defendant's favor—none of which is appropriate at the pleading stage.

[1] Plaintiff respectfully requests the Court to take judicial notice of Plaintiff's First Amended Complaint and the defined terms therein.

This is a suit for breach of contract and fraud. ACES entered into a loan agreement with Defendant whereby ACES agreed to make a short-term loan of $1.4 million to Defendant to refinance loans, pay past due condominium assessments, and satisfy liens for certain real property in distress. ACES made the loan in reliance upon Defendant's fraudulent representation regarding her ability to repay the loan and her intended use of the proceeds to rescue certain real property in distress. ACES fully performed under the loan agreement. Defendant, however, defaulted on the loan and failed to use the loan proceeds for their stated purpose.

## II.
## ARGUMENT

### A. Defendant's Motion to Dismiss Under Rule 12(b)(6)

1. In determining whether to grant a motion to dismiss under Rule 12(b)(6), the court must "accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in the plaintiff's favor." *Emerging Indus. Techs., Inc. v. Fid. Nat'l Info. Services, Inc.*, No. 23-CV-5922, 2024 WL 3791475, at *10 (N.D. Ill. Aug. 13, 2024) (quoting *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011)). "A complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive [a motion to dismiss,] the complaint must give the defendant fair notice of the basis for the claim, and it must be facially plausible." *Emerging Indus. Techs., Inc.*,, 2024 WL 3791475 at *10 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). However, the pleading does not require detailed factual allegations but survives a motion to dismiss "if it pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

2. As an initial matter, federal courts in Illinois have observed that federal pleading standards apply in this diversity case – not "the more rigorous requirements of Illinois law."

*Maurice Sporting Goods, Inc. v. BB Holdings, Inc.*, No. 15-CV-11652, 2016 WL 4439948, at *3 (N.D. Ill. Aug. 23, 2016) (quoting *Skinner v. Shirley of Hollywood, a Div. of Nat. Corset Supply House*, 723 F. Supp. 50, 52 n.1 (N.D. Ill. 1989). As such, while plaintiff "must ultimately prove the [ ] requirements of Illinois substantive law in order to prevail" on its claims, it "need not allege them explicitly under federal notice pleading." *Cleland v. Stadt*, 670 F. Supp. 814, 816 (N.D. Ill. 1987) ("As long as the defendants are on sufficient notice of the nature of the claim, the plaintiff has satisfied federal pleadings requirements").

### 1. <u>COUNT 1 – BREACH OF CONTRACT</u>

3. The FAC plausibly alleges the existence of a loan agreement, ACES's performance, Defendant's repayment obligation, Defendant's breach at maturity, and resulting damages. FAC ¶¶ 10–14. Defendant's arguments regarding borrower identity and payment mechanics raise, at most, issues of interpretation of fact that cannot defeat plausibility at the pleading stage.

4. "In order to survive a motion to dismiss, a complaint based upon breach of contract must allege 1) the existence of a contract between plaintiff and defendant; 2) performance by the plaintiff of the conditions imposed on him by the contract; 3) breach of the contract by the defendant; and 4) damages resulting from the breach. " *Bensdorf & Johnson, Inc. v. N. Telecom Ltd.*, 58 F. Supp. 2d 874, 877 (N.D. Ill. 1999). "A contract is definite and certain if the parties' intent is readily ascertainable from the agreement." *Boone v. MB Fin. Bank, N.A.*, 375 F. Supp. 3d 987, 992 (N.D. Ill. 2019). "The contractual language itself determines the parties' intent, and the entire contract must be viewed as a whole." *Id.*; see *In re Broiler Chicken Antitrust Litig.*, 167 F.4th 430, 439 (7th Cir. 2026) (internal citation omitted) ("[W]e look at the parties' intent to be bound and the agreement on the material terms at the time of contracting, not in its aftermath."). "If a contract is ambiguous, its interpretation is a question of fact and survives a motion to dismiss."

*Boone*, 375 F. Supp. 3d at 992.

5. Here, the Loan Agreement sets forth the term for repayment, interest rate, principal amount, and use of the proceeds. Therefore, the Loan Agreement provides a workable framework for determining breach and damages, which is all Illinois and Federal law requires at this stage.

### 2. COUNT 2 - FRAUD

6. Defendant characterizes ACES's allegations as "one broken promise," but the First Amended Complaint alleges more: a series of representations and omissions made to induce ACES to advance a substantial sum, followed by conduct inconsistent with those representations.

7. "To state a fraud claim under Illinois law, a plaintiff must allege that the defendant: (i) made a false statement of material fact; (ii) knew or believed the statement to be false; (iii) intended to and, in fact, did induce the plaintiff to reasonably rely and act on the statement; and (iv) caused injury to the plaintiff." *Reger Development, LLC v. National City Bank*, 592 F.3d 759, 766 (7th Cir.2010) (citing *Redarowicz v. Ohlendorf*, 92 Ill.2d 171, 65 Ill. Dec. 411, 441 N.E.2d 324, 331 (1982)).

8. Rule 9(b) says that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed.R.Civ.P. 9(b). "While the precise level of particularity required under Rule 9(b) depends upon the facts of the case, the pleading 'ordinarily requires describing the who, what, when, where, and how of the fraud.'" *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir.2014) (quoting *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir.2011)).

9. The FAC alleges that Defendant represented Groh Productions as actively generating substantial revenue and cash flow; that the Condominium had been cash-positive for

decades; and that existing or imminent contracts were sufficient to ensure prompt repayment. FAC ¶¶ 4–6. These are not promises of future performance in the abstract—they are representations of current financial reality bearing directly on creditworthiness.

10. The FAC further alleges falsity, knowledge, intent, reliance, and damages. FAC ¶¶ 7–9, 12–14. Defendant's argument that the phrases "knew or should have known" defeat scienter elevates semantics over substance. Scienter may be alleged generally, and the FAC plainly alleges knowing or reckless misrepresentation. Fed.R.Civ.P. 9(b). At a minimum, whether Defendant acted with the requisite intent is a fact question not suitable for resolution on a motion to dismiss.

11. Nor does Defendant's attempt to dismiss these allegations as mere "puffery" warrant dismissal. Puffery is limited to vague, subjective optimism that no reasonable person would rely on. *In re Midway Games, Inc. Securities Litigation*, 332 F.Supp.2d 1152, 1164 (N.D. Ill. 2004). Courts in this District routinely deny early motions to dismiss where, as here, the alleged statements concerning a defendant's financial expectations are specific, factual, and made in context to induce reliance. *George A. Hedick, Jr. v. Kraft Heinz Co.*, No. 19-CV-1339, 2021 WL 3566602, at *10 (N.D. Ill. Aug. 11, 2021). Even statements containing some optimistic language are not dismissed as puffery where context "add[s] concreteness" to the representations. *United States Sec. & Exch. Comm'n v. Ustian*, 229 F. Supp. 3d 739, 772 (N.D. Ill. 2017).

12. The First Amended Complaint does not rely on vague optimism untethered to any transaction. It alleges concrete, contemporaneous representations about Defendant's existing financial condition and present ability to repay a short-term loan—statements made expressly to induce ACES to advance $1.4 million. Defendant represented that Groh Productions was actively generating substantial revenue and cash flow; that the Condominium had been cash-positive for twenty years; and that existing or imminent projects and contracts were "piling up" and would

generate sufficient funds to repay the Loan promptly. FAC ¶¶ 4–6. These were not aspirational hopes, but representations of current facts bearing directly on creditworthiness and repayment ability. The Complaint further alleges that these statements were false when made, that Defendant lacked the revenue, executable contracts, or imminent cash flow to repay the Loan, and that Defendant knew (or was at least recklessly indifferent to the fact) that they were false. FAC ¶ 8. Whether such statements constitute actionable misrepresentations of fact—rather than non-actionable opinion—turns on context and intent and is rarely resolved on a motion to dismiss. ACES also plausibly alleges reliance and causation: it would not have entered into the Loan Agreement or wired the funds absent these representations, and it was damaged when Defendant failed to use the proceeds as promised and failed to repay the Loan Agreement at maturity. FAC ¶¶ 9, 12–14. At this stage, it is inappropriate and premature to rule that the alleged misrepresentations are non-actionable puffery.

### 3. <u>COUNT 3 - CONVERSION</u>

13. The FAC alleges that ACES advanced a specific, identifiable sum for a limited and defined purpose—to pay specified Financial Obligations associated with the Condominium—and that Defendant exercised wrongful dominion over those funds by diverting them to other uses. FAC ¶¶ 10–13. "To establish conversion of money, a plaintiff must show that: (1) plaintiff's right to the money was 'absolute' and 'immediate'; (2) the money '*at all times* belonged to the plaintiff'; (3) defendant converted the money for its own use; and (4) that the money at issue can be described as 'a specific fund or specific money in coin or bills.'" *Pomaranski v. Chicago Prime Packers, Inc.*, No. 23-CV-5063, 2024 WL 3950315, at *3 (N.D. Ill. Aug. 27, 2024). "To be specific chattel, money need not be segregated or earmarked, but it must at least be a specific fund or specific money in coin or bills, of determinate amount and identifiably distinct." *Id. Dachev v. Rich Am.*,

*Inc.*, No. 17-CV-5729, 2019 WL 7290940, at *5 (N.D. Ill. Dec. 30, 2019) (internal quotation marks omitted) ("Money is a specified and identifiable fund when it is not an estimate but rather a specific amount transferred to [the defendant] from an outside source.").

14. Moreover, Defendant's reliance on *General Motors Corp. v. Douglass* ignores critical factual distinctions. *General Motors* addressed an alleged conversion arising from a mere debtor–creditor relationship, where the defendant was not required to segregate funds, no specific or identifiable fund was alleged, and the plaintiff claimed only a failure to pay money owed. 206 Ill. App. 3d 881, 889, 565 N.E.2d 93, 98 (1990). Here, by contrast, Plaintiff alleges that it advanced a specific, identifiable fund for a limited and defined purpose, and Defendant's authority over those funds was restricted to that purpose. Defendant's diversion of the funds to other uses constitutes wrongful dominion over a specifically identifiable sum.

15. Additionally, the funds at issue were not voluntarily given to Defendant to use freely or to satisfy general obligations, as was the case in *General Motors.* Unlike in *General Motors*, where the payment was commingled with general funds and gave rise only to a debtor–creditor relationship, the funds here were transferred from Plaintiff to Defendant as a specific and determinate sum, earmarked for a limited and defined purpose, and not as an estimate or as part of a generalized obligation to pay money. Plaintiff further alleges that Defendant exercised wrongful dominion over those funds by diverting them to uses inconsistent with the agreed purpose, conduct that would be wrongful even in the absence of an enforceable contract. FAC ¶¶ 10–13.

16. Under Illinois law, conversion does not fail merely because the subject of the claim is money; it fails only where the money represents an undifferentiated debt and not a specific, identifiable fund. Illinois law confirms that conversion lies where the money at all times belongs to the plaintiff and constitutes a specified fund capable of being the subject of conversion.

Accepting the well-pleaded allegations as true, Plaintiff has alleged exactly that.

17. At the pleading stage, ACES is not required to trace each dollar; it need only plausibly allege a superior right to the funds or their proceeds, which it has done.

### 4. COUNT 4 – UNJUST ENRICHMENT

18. Defendant simultaneously argues that the Loan Agreement is unenforceable (Count I) and that it bars unjust enrichment (Count IV). Defendant's contrary positions concerning the enforceability of the Loan Agreement demonstrate why this Court must let ACES' unjust enrichment claim stand.

19. Rule 8(d)(2)-(3) of the Federal Rules of Civil Procedure provides that "[a] party may set forth two or more statements of a claim ... alternately or hypothetically, either in one count ... or in separate counts.... A party may also state as many separate claims ... as the party has regardless of consistency...." Fed.R.Civ.P. 8(d)(2)-(3); see *Oyoque v. DePaul Univ.,* 520 F. Supp. 3d 1058, 1065 (N.D. Ill. 2021)(at the pleading stage that "a party may plead claims in the alternative," including an unjust enrichment claim as an alternative to a breach of contract claim). While the *Oyoque* court dismissed the unjust enrichment claim in that case, it was only because the defendant did not dispute the existence of the contract.

20. Defendant's argument for dismissal of Count 4 rests on a contradiction. On the one hand, Defendant argues that unjust enrichment is unavailable because an express contract governs the parties' relationship. On the other hand, Defendant devotes substantial portions of the Motion to arguing that no enforceable contract exists at all because the alleged Loan Agreement lacks essential material terms, fails to identify a borrower, and omits a payment schedule. Defendant cannot have it both ways.

21. Under Illinois' law, unjust enrichment is barred only where an enforceable contract actually governs the challenged conduct. *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 886 (7th Cir. 2022). Where the defendant disputes contract formation, validity, or essential terms, unjust enrichment may be pleaded in the alternative at this stage.

22. Defendant's reliance on *LKQ Corp. v. Rutledge* and *Gociman* is misplaced. Those cases involved situations where the existence and enforceability of a governing contract were undisputed or the unjust enrichment claim merely duplicated or incorporated a breach-of-contract theory. In *LKQ* the court found that the Plaintiff expressly incorporated allegations about breach of a contract provision in its claim for unjust enrichment, referencing a specific contract provision and "conduct … in breach of the RSU Agreement." *LKQ Corp. v. Rutledge*, 96 F.4th 977, 981 (7th Cir. 2024), certified question answered, 337 A.3d 1215 (Del. 2024). The same facts were present in *Gociman. Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 887 (7th Cir. 2022). ("in the unjust enrichment count of the complaint, the students incorporated by reference allegations of the existence of a contract between the parties…this pleading error prevents their unjust enrichment claim from going forward.").

23. Here, by contrast, Defendant affirmatively disputes whether the Loan Agreement is enforceable at all. Moreover, while it is true that the unjust enrichment claim must not rely on allegations of an express contract governing the parties' relationship, that is not what Plaintiff has done here. *See The Sharrow Group v. Zausa Development Corp.*, No. 04 C 6379, 2004 WL 2806193, at *3 (N.D. Ill. Dec. 6, 2004) ("Nonetheless, while plaintiff may plead breach of contract in one count and unjust enrichment and promissory estoppel in others, it may not include allegations of an express contract, which governs the relationship of the parties, in the counts for unjust enrichment"). ACES has done precisely what Illinois law requires. Count 4 is expressly

pleaded in the alternative and applies only to the extent the Loan Agreement is unenforceable, voidable, or avoided, and it seeks restitution based on Defendant's retention of a direct benefit procured through misrepresentation and misuse of funds, not enforcement of contractual obligations. FAC ¶ 50. In fact, the Loan Agreement is not referenced once within the content of the claim. FAC ¶¶ 51-56. Instead, the claim makes allegations that fall outside of the Loan Agreement including that "ACES conferred this benefit upon Defendant with the reasonable expectation that Defendant would use the Loan proceeds solely for the agreed-upon Financial Obligations related to the Condominium and would repay the Loan pursuant to her representations and promises" and that "Defendant's retention of the Loan proceeds was procured through false representations concerning her financial condition, repayment ability, and intended use of the funds." FAC ¶ 52. Although Count 4 incorporates the factual background paragraphs, it does not incorporate allegations seeking enforcement of any contractual duty or provision. The unjust enrichment allegations do not depend on the validity or enforcement of the Loan Agreement but instead rest on equitable principles.

24. In short, if the Loan Agreement is ultimately found enforceable, unjust enrichment may fall away. But if Defendant's own arguments regarding indefiniteness or lack of essential terms prevail, equity supplies the remedy. This District has denied motions to dismiss on precisely these facts, recognizing that Rule 8 permits alternative pleading even where allegations referring to a purported contract appear elsewhere in the complaint. *KFC Corp. v. Iron Horse of Metairie Rd., LLC*, No. 18 C 5294, 2020 WL 3892989, at *4 (N.D. Ill. July 10, 2020) (allowing unjust enrichment and promissory estoppel to proceed notwithstanding references to an express contract, because quasi-contract recovery is barred only if a valid contract ultimately governs); *Quadion*

*Corp. v. Mache*, 738 F. Supp. 270, 278 (N.D. Ill. 1990) (allowing alternative equitable claims to proceed alongside breach of contract). That determination cannot be made on a motion to dismiss.

25. For the reasons explained above, where, as here, Defendant disputes the enforceability or scope of the contract, ACES may plead unjust enrichment in the alternative. Dismissal at this stage would be improper. Count 4 is therefore properly pleaded and should not be dismissed.

### 5. Constructive Trust (Equitable Remedy)

26. A constructive trust is an equitable remedy designed to prevent unjust enrichment resulting from fraud or other inequitable conduct. "In Illinois, as in most states, the remedy is appropriate '[w]hen a person has obtained money to which he is not entitled, under such circumstances that in equity and good conscience he ought not retain it ... to avoid unjust enrichment.'" *In re Mississippi Valley Livestock, Inc.*, 745 F.3d 299, 304 (7th Cir. 2014) (quoting *Smithberg v. Ill. Mun. Ret. Fund,* 192 Ill.2d 291, 248 Ill.Dec. 909, 735 N.E.2d 560, 565 (2000)). The remedy of constructive trust applies to a subset of unjust enrichment: that resulting from the unauthorized or invalid transfer of property. *In re Mississippi Valley*, 745 F.3d at 304.

27. Because the FAC plausibly alleges fraud and misuse of loan proceeds, it likewise plausibly alleges entitlement to a constructive trust over property acquired, preserved, or maintained with those proceeds. Defendant's reliance on contractual language disclaiming consensual liens does not bar equitable relief based on alleged wrongdoing.

28. Additionally, Defendant's argument assumes the existence of an enforceable contract that conclusively defines the parties' rights. But, as above, Defendant simultaneously argues that the Loan Agreement is unenforceable because it lacks essential material terms. Where

the validity or enforceability of a contract is disputed, a plaintiff may seek equitable relief in the alternative. *Quadion Corp.*, 738 F. Supp. at 278.

29. Moreover, a constructive trust is an equitable remedy imposed to prevent unjust enrichment resulting from fraud or other inequitable conduct, and it would not be governed by the terms of the Loan Agreement if it was found to be unenforceable. The fact that the parties contemplated an unsecured loan does not immunize Defendant from equitable relief where the Complaint plausibly alleges that loan proceeds were obtained or retained through fraudulent inducement or misuse. At the pleading stage, the Court need not determine whether the Loan Agreement ultimately forecloses equitable remedies. If the agreement is found enforceable and to govern the conduct at issue, equitable relief may become redundant. But if Defendant's own arguments regarding indefiniteness or unenforceability prevail, equity supplies the remedy. That determination cannot be made on a motion to dismiss, and ACES's constructive trust claim should be retained.

**B. Defendant's Motion to Strike Punitive Damages Under 12(f)**

30. Defendant asks the Court to strike ACES's punitive damages request as "immaterial." But punitive damages are available where a plaintiff pleads an independent tort accompanied by aggravated or willful conduct. *3Com Corp. v. Elecs. Recovery Specialists, Inc.*, 104 F. Supp. 2d 932, 942 (N.D. Ill. 2000) (citing *Hardin, Rodriguez & Boivin Anesthesiologists, Ltd. v. Paradigm Ins. Co.*, 962 F.2d 628, 638 (7th Cir.1992); *Morrow v. L.A. Goldschmidt Associates, Inc.*, 112 Ill.2d 87, 96 Ill.Dec. 939, 492 N.E.2d 181, 184 (1986) (Punitive damages are recoverable "where the breach amounts to an independent tort and there are proper allegations of malice, wantonness or oppression.")).

31. Rule 12(f) motions are disfavored and should be applied only if the allegations "are

so unrelated to plaintiff's claim as to be devoid of merit, unworthy of consideration, and unduly prejudicial. " *Siegel v. HSBC Holdings, plc,* 283 F. Supp. 3d 722, 730 (N.D. Ill. 2017). Moreover, Rule 12(f) is not the proper vehicle to attack the sufficiency of Plaintiff's claims." *Ehlerding v. Am. Mattress & Upholstery, Inc.*, 208 F. Supp. 3d 944, 953 (N.D. Ind. 2016).

32. Defendant's motion mirrors, and fails for the same reasons as, the motion rejected in 3Com Corp.. *See 3Com Corp. v. Elecs. Recovery Specialists, Inc.*, 104 F. Supp. 2d 932, 943 (N.D. Ill. 2000). There, the court denied a motion to strike punitive damages where the plaintiff alleged facts supporting an independent tort accompanied by "willful, intentional and malicious" behavior, holding that such allegations were sufficient to state a claim for punitive damages based on a breach of contract at the pleading stage. *See Id.* As in *3Com*, ACES pleaded detailed facts supporting independent tort claims, most notably fraud, alleging intentional misrepresentations, knowing deception, and misuse of funds. Those allegations, if proven, would support an award of punitive damages under Illinois law.

33. Because ACES plausibly alleges intentional fraud and related inequitable conduct, the punitive damages request has a clear relationship to the controversy and should not be stricken at the pleading stage.

## III.
## PRAYER

For the foregoing reasons, ACES respectfully requests the Court to deny Defendant's Motion to Dismiss and Motion to Strike in its entirety and grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

*Lance R. Minor*

**LANCE R. MINOR**
ARDC #6256405
120 North La Salle Street, 20th Floor
Chicago, Illinois 60602
Tel: (773) 469-1520

**KELLY M. CRAWFORD**
Admitted Pro Hac Vice
Texas State Bar No. 05030700
Kelly.Crawford@solidcounsel.com
500 N. Akard Street, Suite 2700
Dallas, Texas 75201
Tel.: (214) 706-4200
Fax: (214) 706-4242

**ATTORNEYS FOR PLAINTIFF ALAMO CITY ENGINEERING SERVICES, INC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 14, 2026, I electronically filed the foregoing document with the clerk of the U.S. District Court, Northern District of Illinois, using the electronic case filing system of the court, which provided a "Notice of Electronic Filing" to all attorneys of record.

*/s/ Lance Minor*
**LANCE MINOR**